DANIEL WILSON *v.* HENRY SANDERS AND WIFE.

**Wills—Devise in Trust.**

Where a testator placed certain real estate in the hands of his executor to be rented out for the benefit of one of his sisters, it was held not to confer a life estate on the sister, but to give an absolute title to the executor in trust for the sister.

APPEAL FROM LOUISVILLE CHANCERY COURT.

December 5, 1873.

OPINION BY JUDGE PRYOR:

The only question presented in this case is whether Marshall and Nettie Walthall did take, as devisees under the will of A. G. Walthall, or as heirs of Emaline P. Walthall. In order to determine this question it must be ascertained whether Emaline took a fee simple or a life estate in the realty devised to her by her brother. The devisor had two sisters, namely, Mrs. Sanders, wife of Harry Sanders, and Emaline P. Walthall. The will, upon its face, exhibits a bad feeling on the part of the testator towards his brother-in-law, Harry Sanders, and a determination on his part, evidenced by the express language of the will that he should have no interest whatever in his estate. He owned no other property, so far as appears from the record, except that to which special reference is made in the will.

This will contains the following provisions, viz.: "I give and bequeath unto my sister, Eliza Frances Sanders, my brick house and lot on eighth street, between Walnut and Chestnut, during her natural life. She is to have and hold said house and lot for her special benefit; her husband, Harry Sanders, is to have no control whatever over any part of said house and lot; and at her death, the said house and lot, my administrators will take charge of, as the balance of my estate. The three houses and lots on Fifth street, I give and bequeath to my sister, Emaline P. Walthall. They are to be rented out by my administrator for her special benefit, and they are to pay the taxes, insurance, and repairs out of the rents. I also give to my sister, Emaline P. Walthall, all my personal property. She may sell any part she may think proper. And my black woman, Hannah, I give

to Emaline P. Walthall during her natural life; and at her death the said Hannah is to be free for life." The devisor then proceeds to give the balance of his estate to his two nephews by name, "to be equally divided between them," etc. There can be no doubt but what the devise to Mrs. Sanders vested in her a life estate only, and that his sister, Emaline, held only a life estate in the negro woman, Hannah. The devisor not only knew how to create a life estate, and the language necessary to be used for that purpose, but has in express terms made such a limitation to both sisters, the one in the land, and the other in the negro.

In this devise to Mrs. Sanders he gives to her not only the rents of the real estate, but the right to enter and take the possession and control in her own right at his death; but in the devise to his sister, Emaline, he places the property in the hands of his administrator, to be rented out for her special benefit. He gives to her the three houses and lots on Fifth street, without any limitation or restriction except that his administrators, as he terms them, are to have the possession and rent them out for her. Why he made this distinction and placed Emaline's real estate under the control of trustees does not appear, but his reason for giving to Mrs. Sanders only a life estate, centered, no doubt, in the fact that he did not intend her husband should even occupy any part of his estate. He says in his will that he wants it distinctly understood "that I will him not one cent; let him work as I have done, he is too lazy to take care of his family."

Now, after Mrs. Sanders' death, he directs his administrator to take charge of the house and lot as of the balance of his estate; he had already placed Emaline's interest under the con-control of his administrator, and when Mrs. Sanders died he wanted them to take charge of what he had devised to her. There is no reason why he should have given his sister, Emaline, a life estate. He had already limited the interests of his sisters in certain property for life; and if it was his purpose to give Emaline only a life estate in the realty, it is singular that he should give her an interest in the woman, Hannah, in express terms for life, and omit to limit her interests in the city property, unless he intended, as we think it clearly appears, that his administrator should hold the absolute title as trustees for her

special use. It is true he gives to his sister the right to dispose of the personal property absolutely, but this does not conflict with or operate to change the character of the devise made of the real estate. He was doubtless willing that she should use the personalty, as it was his intention to vest these trustees with the absolute title, as well as the control, in order that she might be secure in its beneficial use.

When the devisor directs the property devised to Mrs. Sanders to be taken charge of as the balance of his estate, he means that his estate is already in the hands of his administrator for the purposes expressed in the will, but not to change or alter the character of the holding by the administrators. They held the real property devised to Emaline solely for her use, without any devise over or remainder; and the balance in their hands, to which the appellees were entitled, was this house and lot in which Mrs. Sanders held the life estate. Wherefore, the judgment is reversed and cause remanded for further proceedings consistent herewith. The case is affirmed on the cross-appeal. There is no reason why the limitation of five years prior to the institution of the suit may not be pleaded as against a recovery for the rents due before that time, nor do we understand that this point is controverted.

*Pirtle, for appellant.*

*Hord, James, Joyes, for appellees.*